IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 14 2024

TAMMY H. DOWNS, CLERK
By: _____
                    DEP CLERK

Jennifer Holtz,

    Plaintiff,

v.   Case No. 4:24-cv-511-LPR

Board of Trustees of the University of
Arkansas; Ann Bain, *in her official capacity*;
and Thomas Clifton, *in his official capacity*;

This case assigned to District Judge Rudofsky
and to Magistrate Judge Harris

    Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

The plaintiff, Jennifer Holtz ("Plaintiff" or "Dr. Holtz"), by and through undersigned counsel, brings claims against the defendants, the University of Arkansas ("the University"); Ann Bain, in her official capacity ("Defendant Bain" or "Dr. Bain"); and Thomas Clifton ("Defendant Clifton" or "Mr. Clifton"), in his official capacity; for discrimination on the basis of disability in violation of the Rehabilitation Act and the Americans with Disabilities Act ("ADA"), and in support of those allegations, states as follows:

### PARTIES

1. Dr. Holtz is a professor and the Director of the School of Counseling, Human Performance, and Rehabilitation at the University.

2. At all times relevant hereto, the University was a body politic and corporate that was created, regulated and sanctioned by the state of Arkansas.

3. Ann Bain is the Provost of the University of Arkansas at Little Rock ("UALR").

4. Thomas Clifton is the Interim Dean of UALR's College of Business, Health, and Human Services.

5. At all times relevant hereto, the University and UALR were recipients of federal funds.

## JURISDICTION AND VENUE

6. This Court's jurisdiction over the subject matter of this action is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

7. Venue is proper under 28 U.S.C.§ 1391(b) because the parties are located in the Eastern District of Arkansas and the unlawful employment practices alleged herein took place in this district.

8. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 23, 2023, alleging failure to provide a reasonable accommodation for a disability and retaliation for making a disability accommodation request. At Plaintiff's request, the Department of Justice issued a Notice of Right to Sue on March 18, 2024.

## FACTS COMMON TO ALL CLAIMS

9. Dr. Holtz earned a PhD in Adult and Continuing Education, with a medical education emphasis, from Kansas State University in 2002.

10. She has been employed at UALR since 2010 and has been the Director of the School of Counseling, Human Performance, and Rehabilitation ("CHPR") since 2016. She is a Professor, the University's highest academic rank.

11. CHPR is one of the five Schools within the College of Business, Health, and Human Services ("the College"). Dr. Holtz was appointed as the Director of CHPR in 2016 by then-dean Ann Bain.

12. CHPR, which caters mostly to working professionals, offers courses predominantly online. Of the ten degrees in CHPR, all include online courses. Five of the degrees are fully online, which means that they do not, and are not allowed to, require on-campus courses; these programs enroll approximately 475 students. Three are primarily on-campus degrees and are smaller in enrollment (approximately 60 students total); two are hybrid, one requiring one on-campus course and the other

requiring between three and five on-campus courses each. These degrees have the smallest enrollments (approximately 25 students total).

13. Dr. Holtz has had fibromyalgia and chronic fatigue syndrome since long before her employment at UALR began. Dr. Holtz has also suffered from Long COVID since November of 2022, which exacerbated her symptoms relating to her chronic conditions. Her symptoms include but are not limited to fatigue and episodic extreme pain that can only be managed effectively with medication.

14. Because of those disabilities, Dr. Holtz is substantially limited in her ability to walk, sit or stand for long periods of time; climb up and down stairs; sleep; bend; and lift. When her symptoms are severe or untreated, she is intermittently substantially limited in her ability to drive (due to the medication needed to treat pain altering her depth perception) and work.

15. Defendant Bain knew about Dr. Holtz's physical limitations related to her fibromyalgia and chronic fatigue syndrome since before Dr. Holtz applied to the position of Director of the CHPR. In fact, Dr. Holtz expressed hesitancy to Dr. Bain about applying for the position, explaining that her chronic conditions would limit her ability to always be in the office during business hours. Dr. Bain encouraged Dr. Holtz to apply, assuring her that she would give her as much flexibility as possible.

16. Since the beginning of Dr. Holtz's appointment as Director of the CHPR and until June of 2023, Dr. Bain and subsequent deans did in fact grant Dr. Holtz the flexibility she needed to perform her duties as Director despite her physical limitations. The informal reasonable accommodations the University granted from 2016 until June of 2023 permitted Dr. Holtz to work from home and work flexible hours, as needed. Dr. Bain seemed to recognize that Dr. Holtz had been dealing with her disabilities for a long time and had developed effective ways of performing at a high level despite those disabilities, when given the freedom to manage her pain and fatigue.

17. Dr. Holtz has excelled in her position as Director from 2016 until the present, and received positive performance evaluations. She routinely works more than the required 40 hours per week in order to meet the needs of the School as well as the needs of her faculty and students.

18. CHPR is the most complex school in the College, as it includes five diverse and unique professional programs that require specialized knowledge and different management approaches. In her Director position, Dr. Holtz manages more than 20 full-time faculty, another approximately 20 adjunct faculty, between two and five staff members, and five programs. She also teaches two graduate courses per year. Dr. Holtz sometimes steps in to teach extra classes when faculty members became unavailable, on top of her full-time position.

19. Throughout the period of Dr. Holtz's Directorship, CHPR's enrollment rate remained stronger than the University's departmental average; CHPR's overall enrollment numbers either remained stable or increased between 2016 and the present.

20. During the COVID-19 pandemic, from March of 2020 until approximately August of 2021, Dr. Holtz and nearly all other UALR Directors and faculty worked almost exclusively from home.

21. Starting in approximately August 2021, administrators largely returned to the office. Dr. Holtz continued the remote work arrangement, with the knowledge of Dr. Bain, because her doctors recommended that she continue working remotely since she was particularly vulnerable to COVID-19.

22. The remote work arrangement has become especially important recently, as Long COVID has aggravated Dr. Holtz's chronic pain and fatigue.

23. In April of 2023, at the request of Dr. Bain, Interim Dean, Deborah Baldwin ("Dr. Baldwin") informed Dr. Holtz that if she wanted to continue working from home and working flexible hours, as needed, she would have to formally apply for disability accommodations. Dr.

Holtz complied and submitted documentation from her physician identifying her conditions and the accommodations which she was seeking.

24. In June of 2023 the University informed Dr. Holtz that her accommodation request had been denied and that she could no longer work from home nor work flexible hours as needed. Instead, for the first time in seven years, the University determined that Dr. Holtz needed to have a set schedule and be in the office every day. On information and belief, this determination was made by Dr. Bain.

25. In June of 2023, Dr. Baldwin established a schedule for Dr. Holtz that would require her to work in the office from 7:00 a.m. to 1:00 p.m. daily and remotely from 2:00 p.m. to 4:00 p.m.

26. Certain other UALR Directors whose programs are not primarily online periodically work from home. Dr. Holtz asked that she at least be permitted to work from home one day per week like other Directors routinely do, and the University denied that request.

27. The schedule UALR established in June 2023 does not reasonably accommodate Dr. Holtz's disability. Dr. Holtz's chronic pain and fatigue are sometimes unpredictable and sometimes require Dr. Holtz to take a break during the work day or take medication that would prevent her from driving.

28. Dr. Holtz explained to Dr. Baldwin and Karen Baker, the Director of Human Resources, that the denial of her request to work one day per week remotely meant that she would need to take sick leave on days when she was capable of working but not capable of driving to the office.

29. Dr. Holtz has in fact been required to take unnecessary sick leave on days when she was capable of working. She has also been forced to work on days she was in significant pain and would have taken a sick day, because she feared running out of sick days due to the forced in-office schedule. This resulted in longer work hours overall, because Dr. Holtz was not permitted to work

at times when she was perfectly capable of working and forced to work at times when she was in significant pain, leading to inefficiency.

30. On August 11, 2023, Dr. Holtz requested a modification of the approved work schedule, explaining that working from 7-1 was too long a stretch and causing significant pain, especially when there is extreme heat and humidity, and asked that she be permitted to take a lunch break at home from 12-1 and work remotely from 1-4.

31. On August 15, 2023, the new Interim Dean Thomas Clifton ("Mr. Clifton") denied Dr. Holtz's modification accommodation request.

32. After consulting with Mr. Clifton, Ms. Baker told Dr. Holtz on August 24, 2023, "[Y]ou are not exposed to extreme heat to perform the essential functions of your job. Therefore, your accommodation, approved on June 28, 2023, will remain the same."

33. Dr. Holtz's physician, Dr. Caleb Guthrey, wrote a letter, which Dr. Holtz's counsel conveyed to the University on August 29, 2023. Dr. Guthrey wrote,

> I note that there is a misunderstanding at the university as to the effect of heat and humidity on Dr. Holtz's condition. Despite not working outside in heat and humidity, weather conditions of heat and humidity cause additional pain and fatigue in persons with fibromyalgia and chronic fatigue syndrome. This is unrelated to the ambient temperature of the work environment.

Dr. Holtz's counsel therefore asked that she be permitted to take a break from 12:00-1:00, explaining that faculty, staff, and students rarely contacted her about work during the lunch hour anyway.

34. Ms. Baker responded that Mr. Clifton's decision not to allow Dr. Holtz to take her lunch break during the lunch hour had not changed. She forwarded an August 15 memo from Mr. Clifton which claimed, "Dr. Holtz is in a supervisory position with direct oversight of 11 faculty, 1 staff member and 387 face-to-face students enrolled for the fall semester in addition to the online

students. Dr. Holtz's presence, as outlined in her current ADA accommodations, is required for the success of the School of Counseling, Human Performance, and Rehabilitation."

35. The fact that Dr. Holtz serves in a supervisory capacity does not explain the need for her to be in the office. Dr. Bain, for example, is also in a supervisory position and is the highest academic officer in all of UALR, yet often works remotely. The other Directors of schools within the College (who have not requested an accommodation and/or are not disabled) work remotely as needed, as Defendants Bain and Clifton know. On information and belief, Defendants have not required those Directors to work on campus every day.

36. The nature of CHPR and Dr. Holtz's supervisory work make remote work even more appropriate. Faculty members are specialized professionals who work largely independently. In CHPR, the vast majority of them work remotely and teach online. Even while on campus, Directors do not need to have daily meetings with faculty, nor do faculty members usually check in with them in person. In fact, the University has acknowledged that Dr. Holtz can do her supervision work without being in the office in the afternoon by allowing her to work remotely after 1:00.

37. Nor does the fact that a small minority of CHPR's students attend their classes in-person necessitate Dr. Holtz's daily presence on campus. Dr. Holtz's own students in the classes she teaches are exclusively remote. When other students in the School need to talk to her, if she is not in the office or not available, she has historically corresponded with them over the phone or electronic mail, or less often, scheduled in-person meetings with them at a specific time.

38. Dr. Holtz's remote work has never impeded her ability to supervise staff and faculty, and to address student questions and concerns. To the contrary, the historical flexibility UALR provided her prior to June of 2023 allowed her to more effectively use her time to manage the School.

39. In February of 2024, Dr. Holtz tried one more time to secure the flexibility UALR granted her in the past, or at minimum, that she be permitted to adjust her in-office hours. Dr. Holtz's

7

doctor provided a letter explaining that the work arrangement in place was "significantly exacerbating Dr. Holtz's physical pain." He related that by noon, Dr. Holtz's pain becomes intolerable and interferes with her ability to think clearly. He also pointed out that her medication relieves those symptoms but Dr. Holtz cannot take it at noon if she is at the office because it prevents her from driving, as it causes altered depth perception. Dr. Holtz's physician also explained that although Dr. Holtz is able to work in the office from 7-12 on most days, on some days Dr. Holtz's pain is worse than usual, and she would normally take her medication earlier in the day, but cannot if she is working at the office, so instead she is forced to take sick leave on those days.

40. For the reasons her doctor identified, Dr. Holtz therefore asked to be permitted to work in the office from 7:00 until noon and remotely in the afternoon. She also asked that on days when she experiences greater pain, she be permitted to work from home.

41. Defendants denied Dr. Holtz's February 2024 request for an accommodation. They did not explain why Dr. Holtz's presence in the office during what most of the University community considers to be the lunch hour furthers any legitimate purpose. To the contrary, it would be more efficient for Dr. Holtz's lunch hour to correspond to that of her colleagues, and for her to resume work at 1:00 p.m. like most of her colleagues do.

42. Neither Dr. Bain nor Mr. Clifton, nor any other administrator at UALR, has claimed that the accommodations Dr. Holtz sought posed or would pose an undue burden for the University, nor would they create an undue burden.

43. As a result of Defendants' denial of Dr. Holtz's accommodation request and its refusal to grant reasonable requests for modification of the work schedule they imposed, Dr. Holtz was forced to work longer hours than she would have if she had been permitted to manage her schedule more effectively, was forced to work on days she would otherwise have taken sick leave, and was forced to

refrain from taking sick days on days she needed them in order to preserve her sick days. The schedule also exacerbated Dr. Holtz's physical pain gratuitously, and caused her emotional suffering.

### LEGAL CLAIMS

### COUNT I
### Failure to provide reasonable accommodation for disability in violation of Title I of the ADA, 42 U.S.C. §§ 12112
### Against Defendants Bain and Clifton

44. Each paragraph of this complaint is incorporated as if fully restated herein.

45. Dr. Holtz is a qualified individual with a disability within the meaning of the ADA.

46. Defendants Bain and Clifton have been aware of Plaintiff's disability-related limitations at all times relevant to the allegations in this complaint.

47. From 2016 until June of 2023, Dr. Holtz had been permitted to work from home and work flexible hours as needed to accommodate her disabilities. Those accommodations were reasonable given the nature and responsibilities of Plaintiff's position.

48. Starting in June of 2023, Dr. Bain (and starting in the 2023-24 academic year, Mr. Clifton) no longer permitted Dr. Holtz flexibility in work location and schedule, although there have been no corresponding changes to her job responsibilities that would preclude the continuation of these accommodations.

49. Instead, they required her to work in the office every day from 7:00 – 1:00 and remotely from 2:00 – 4:00. That schedule is not a reasonable accommodation; working in the office during the hours established by the University is not required for Dr. Holtz to perform the essential functions of her directorship of a mostly online School.

50. On information and belief, several other Directors and higher level administrators are permitted to work from home routinely, although they are either not disabled or they did not make a formal request for accommodations.

9

51. Defendants could have reasonably accommodated Dr. Holtz but chose not to.

52. Plaintiff seeks only injunctive relief as remedy for the ADA violations alleged herein.

## COUNT II
### Failure to provide reasonable accommodation for disability
### Section 504 of the Rehabilitation Act
### Against all Defendants

53. Each paragraph of this complaint is incorporated as if fully restated herein.

54. Plaintiff is an individual with disabilities who is otherwise qualified for her position within the meaning of the Rehabilitation Act.

55. Defendants have been aware of Plaintiff's disability-related limitations at all times relevant to the allegations in this complaint.

56. Starting in June of 2023, Defendants no longer permitted Dr. Holtz flexibility in work location and schedule.

57. Instead, they required her to work in the office every day from 7:00 – 1:00 and remotely from 2:00 – 4:00. That schedule is not a reasonable accommodation.

58. Working in the office during the hours established by the University is not required for Dr. Holtz to perform the essential functions of her directorship of a mostly online School.

59. Defendants could have reasonably accommodated Dr. Holtz but chose not to.

WHEREFORE, Plaintiff respectfully requests:

- Injunctive relief requiring Defendants to grant Dr. Holtz a reasonable accommodation;
- Compensation for the sick days Dr. Holtz was forced to take due to the denial of the reasonable accommodation;
- Damages for emotional distress;

- Prejudgment interest;

- Attorneys' fees and costs; and

- Such other relief as law and justice allow.

## JURY DEMAND

Plaintiff requests a trial by jury with respect to any issues so triable.

DATED: June 13, 2024

Respectfully submitted,

Dr. Jennifer Holtz, Plaintiff

By:

/s/ Rima Kapitan

*Pro Hac Vice application
filed concurrently herewith*
Atty No. 6286541 (Illinois)
Kapitan Gomaa Law, P.C.
P.O. Box 46503
Chicago, Illinois 60646
Phone: (312)566-9590
rima@kapitangomaa.com

Caleb G. Conrad
Ark. Bar No. 2020119
Conrad Law Firm, PLLC
P.O. Box 251754
Little Rock, AR 72225
(501) 208-8050
caleb@conradlawpllc.com