IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JENNIFER HOLTZ**                                                                                          **PLAINTIFF**

v.                                       Case No. 4:24-cv-00511-LPR

**BOARD OF TRUSTEES OF THE
UNIVERSITY OF ARKANSAS;
ANN BAIN, in her official capacity; and
THOMAS CLIFTON, in his official capacity**                            **DEFENDANTS**

## ORDER

This is a reasonable-accommodation case. Plaintiff Jennifer Holtz alleges that the University of Arkansas discriminated against her by failing to reasonably accommodate her disability.[1] Dr. Holtz brings her claims under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act.[2] The ADA claims are brought against the Provost of the University of Arkansas at Little Rock (UALR) and the Interim Dean of UALR's College of Business, Health, and Human Services.[3] The Section 504 claims are brought against the Board of Trustees of the University of Arkansas, the Provost, and the Interim Dean.[4] The ADA claims and the Section 504 claims essentially overlap.[5] And because the Provost and Interim Dean are sued in their official capacities only, the claims against them are actually claims against the Board of

---

[1] *See* Compl. (Doc. 1).

[2] *Id.* ¶¶ 44–59.

[3] *Id.* ¶¶ 3–4, 44–52.

[4] *Id.* ¶¶ 53–59.

[5] *See Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998) ("The ADA has no federal funding requirement, but it is otherwise similar in substance to the Rehabilitation Act, and 'cases interpreting either are applicable and interchangeable.'" (quoting *Allison v. Dep't of Corr.*, 94 F.3d 494, 497 (8th Cir. 1996))).

Trustees.[6]  What this means is that, for all practical purposes, there is only one substantive claim at issue here.

Pending before the Court are Defendants' Motions to Dismiss.[7]  They assert that Plaintiff's Complaint fails to state a viable cause of action and should thus be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[8]  For the reasons set out below, the Court agrees and will therefore GRANT the Motions.  Rather than enter a final judgment, however, the Court will give Plaintiff an opportunity to amend her Complaint.

I.   BACKGROUND

At the motion to dismiss stage, the Court must treat the record in a very specific way.  First, the Court may only consider allegations in the complaint, materials attached to or embraced by the complaint, public records, and other evidence of which the Court has properly taken judicial notice.[9]  Second, the Court must take as true all facts pled in the operative complaint.[10]  Third, the Court must then decide, based on those assumed-to-be-true facts, whether a plaintiff has stated a plausible claim for judicial relief.[11]  The plausibility threshold is quite low, but it is not nothing.  It

---

[6] *See Greenwood v. Ross*, 778 F.2d 448, 449 n.1 (8th Cir. 1985) ("Arkansas state law designates the Board of Trustees of the University of Arkansas as the entity capable of being sued."); *Liang v. Rahn*, No. 4:17-cv-00135, 2017 WL 3205543, at *3 (E.D. Ark. July 27, 2017) ("[A] suit against individual [University] employees in their official capacities is another way of asserting a claim against [the University] . . . .").

[7] Board of Trustees' Mot. to Dismiss (Doc. 7); Provost's Mot. to Dismiss (Doc. 13).

[8] *See* Br. in Supp. of Board of Trustees' Mot. to Dismiss (Doc. 8) at 5–10; Br. in Supp. of Provost's Mot. to Dismiss (Doc. 14).

[9] *See Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012).

[10] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  On the other hand, the Court is not required to (and should not) accept a complaint's legal conclusions or conclusory allegations.  *See, e.g.*, *Wiles v. Capitol Indem. Grp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true when considering a motion to dismiss, the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations.").

[11] *See Ingram v. Ark. Dep't of Corr.*, 91 F.4th 924, 927 (8th Cir. 2024).

2

requires more than a possibility of that the defendant acted unlawfully, but far less than a certainty that defendant acted unlawfully.[12]

In light of the foregoing, here's the background necessary to understand and resolve the instant Motion. In 2016, Dr. Holtz was appointed to Director of UALR's School of Counseling, Human Performance, and Rehabilitation.[13] In her role as Director, Dr. Holtz manages more than 20 full-time faculty, 20 adjunct faculty, and a handful of staff members.[14] The School offers ten degrees.[15] For five of those degrees, the programs are fully online—which means they are not allowed to require on-campus courses.[16] These programs collectively enroll about 475 students.[17] For three of the ten degrees, the programs are primarily on-campus—which means they generally require students to attend on-campus courses.[18] These programs collectively enroll about 60 students.[19] The final two degree programs require both online and on-campus courses.[20] These hybrid programs collectively enroll about 25 students.[21]

Dr. Holtz has had fibromyalgia and chronic fatigue syndrome for a long time—well before she came to UALR.[22] On top of those ailments, she currently also suffers from Long COVID, which she developed in November of 2022.[23] Her symptoms from the combined effects of these

---

[12] *See Iqbal*, 556 U.S. at 678.

[13] Compl. (Doc. 1) ¶ 10. Dr. Holtz has been employed by UALR since 2010. *Id.*

[14] *Id.* ¶ 18.

[15] *Id.* ¶ 12.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.* ¶ 13.

[23] *Id.*

ailments are fatigue and episodic extreme pain.[24] These symptoms, in turn, substantially limit Dr. Holtz's ability to walk, sit, or stand for long periods; climb up and down stairs; sleep; bend; and lift.[25] Sometimes (it is not stated how often), her symptoms are so severe that they limit her ability to work.[26] Additionally, when she has to take medicine to control the severe symptoms, she is limited in her ability to drive because the medication alters her depth perception.[27]

In 2016, despite knowing about her ailments, symptoms, and limitations, the Provost (who was Dean of the College of Business, Health, and Human Services at that time) (1) encouraged Dr. Holtz to apply for the Director position, and (2) told Dr. Holtz that she would be given "as much flexibility as possible."[28] From 2016 until June 2023, Dr. Holtz felt that she was given "the flexibility she needed to perform her duties as Director despite her physical limitations."[29] Specifically, Dr. Holtz was "permitted . . . to work from home and work flexible hours, as needed."[30] For this seven-year period, Dr. Holtz received positive performance evaluations.[31] The enrollment rate in the School she supervised remained stronger than the University-wide average.[32] And the enrollment numbers either remained stable or increased during that time period.[33]

---

[24] *Id.* The Complaint states that "[h]er symptoms include but are not limited to" the two symptoms referenced in the text. *Id.* However, because she only identifies the two symptoms, the Court cannot and will not speculate about any additional symptoms.

[25] *Id.* ¶ 14.

[26] *Id.*

[27] *Id.*

[28] *Id.* ¶¶ 11, 15.

[29] *Id.* ¶ 16.

[30] *Id.* From March of 2020 until August of 2021, nearly all UALR Directors and faculty worked from home due to COVID. *Id.* ¶ 20. In August 2021, administrators largely returned to working on campus. *Id.* ¶ 21. But Dr. Holtz "continued the remote work arrangement, with the knowledge of [the Provost] . . . ." *Id.*

[31] *Id.* ¶ 17.

[32] *Id.* ¶ 19.

[33] *Id.*

In April of 2023, at the request of the Provost, Dr. Holtz was informed that, "if she wanted to continue working from home and working flexible hours, as needed, she would have to formally apply for disability accommodations."[34] So, Dr. Holtz formally applied for accommodations.[35] In June of 2023, that request was denied by the Provost, and Dr. Holtz was told "that she could no longer work from home nor work flexible hours as needed."[36] Instead, she was told that she "needed to have a set schedule and be in the office every day."[37] But she did get an accommodation in the form of a modified work schedule.[38] An Interim Dean created a work schedule for Dr. Holtz that required her to "work in the office from 7:00 a.m. to 1:00 p.m. daily and remotely from 2:00 p.m. to 4:00 p.m."[39]

Dr. Holtz's immediate follow-on request—"that she at least be permitted to work from home one day per week like other Directors routinely do"—was rejected.[40] Dr. Holtz explained to the Interim Dean (and the HR Director) that "the denial of her request to work one day per week remotely meant that she would need to take sick leave on days when she was capable of working but not capable of driving to the office."[41] This did not change the University's mind.

---

[34] *Id.* ¶ 23.

[35] *Id.*

[36] *Id.* ¶ 24.

[37] *Id.*

[38] *Id.* ¶ 25.

[39] *Id.*

[40] *Id.* ¶ 26. The Provost "often works remotely." *Id.* ¶ 35. Other Directors of other schools within the College "work remotely as needed," with the Provost's knowledge. *Id.* The Provost has not required those other Directors "to work on campus every day." *Id.* Additionally, the vast majority of faculty members in the School of Counseling, Human Performance, and Rehabilitation work remotely and teach online. *Id.* ¶ 36. Directors do not need to have daily meetings with faculty, and faculty members do not usually check in with Directors in person. *Id.*

[41] *Id.* ¶ 28.

The new schedule has forced Dr. Holtz "to work on days she was in significant pain . . . ."[42] It has also required her to take "unnecessary sick leave on days when she was capable of working[,]" but not capable of getting to the office.[43] Overall, the new schedule has "resulted in longer work hours . . . because Dr. Holtz was not permitted to work at times when she was perfectly capable of working and forced to work at times when she was in significant pain, leading to inefficiency."[44] On July 23, 2023, Dr. Holtz filed a Charge of Discrimination with the EEOC, alleging both a failure to provide reasonable accommodation and retaliation for making an accommodation request.[45]

Later, on August 11, 2023, Dr. Holtz requested a modification of her new schedule.[46] She asked that she be able to take a lunch break at home from 12:00 p.m. to 1:00 p.m. and work remotely from 1:00 p.m. to 4:00 p.m.[47] She explained, as the basis for her request, that working on-campus from 7:00 a.m. to 1:00 p.m. "was too long a stretch and [was] causing [her] significant pain, especially when there [was] extreme heat and humidity. . . ."[48] Four days later, the (new) Interim Dean denied this request.[49] The HR Director, "[a]fter consulting with" the Interim Dean, explained to Dr. Holtz that the modification request was denied because Dr. Holtz was "not exposed to extreme heat to perform the essential functions of [her] job."[50]

---

[42] *Id.* ¶ 29.

[43] *Id.* ¶¶ 28–29.

[44] *Id.* ¶ 29.

[45] *Id.* ¶ 8.  Dr. Holtz does not bring a retaliation claim in the instant case.

[46] *Id.* ¶ 30.

[47] *Id.*

[48] *Id.*

[49] *Id.* ¶ 31.  At this point, the Interim Dean was Thomas Clifton, who is a named Defendant in this case.  *Id.*  Prior to this, the Interim Dean was Deborah Baldwin, who is not a named Defendant.  *Id.* ¶ 23.  But none of that matters because Mr. Clifton has been sued in his official capacity only.

[50] *Id.* ¶ 32.

In response, Dr. Holtz had her physician write a letter (which was delivered to the University by her lawyer).[51] The letter asserted that "[d]espite not working outside in heat and humidity, weather conditions of heat and humidity cause additional pain and fatigue in persons with fibromyalgia and chronic fatigue syndrome."[52] The letter added that this phenomenon "is unrelated to the ambient temperature of the work environment."[53] Dr. Holtz, through her lawyer, thus asked the University to reconsider its denial of the requested schedule modification.[54] But the University stuck with its initial decision.[55] This time, the Interim Dean, in a memorandum concerning this reconsideration request, gave the following reason for denying the modification: "Dr. Holtz is in a supervisory position with direct oversight of 11 faculty, 1 staff member[,] and 387 face-to-face students enrolled for the fall semester[,] in addition to the online students. Dr. Holtz's presence, as outlined in her current ADA accommodations, is required for the success of the School of Counseling, Human Performance, and Rehabilitation."[56]

In February of 2024, Dr. Holtz again sought "to secure the flexibility" that the University had "granted her in the past," or "at minimum, that she be permitted to adjust her in-office hours."[57] Specifically, she asked "to be permitted to work in the office from 7:00 until noon and remotely in the afternoon," and she also asked that, "on days when she experiences greater pain, she be permitted to work from home."[58] To support her request, she provided another letter from her

---

[51] *Id.* ¶ 33.

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.* ¶ 34.

[56] *Id.*

[57] *Id.* ¶ 39.

[58] *Id.* ¶ 40.

doctor, which asserted that "the [current] work arrangement in place was 'significantly exacerbating Dr. Holtz's physical pain.'"[59] According to the letter, "Dr. Holtz is able to work in the office from 7-12 on most days," but "by noon, Dr. Holtz's pain becomes intolerable and interferes with her ability to think clearly."[60] The letter explains that although "her medication relieves those symptoms[,] [she] cannot take it at noon if she is at the office because it prevents her from driving . . . ."[61] Moreover, according to the letter, on the "some days" that "Dr. Holtz's pain is worse than usual," she is forced to take sick leave because she can't take her medicine earlier in the day if she has to drive to and from campus.[62] Dr. Holtz's new request for a modification was denied without explanation.[63]

Despite all of the foregoing, Dr. Holtz still serves in the Director role.[64] Indeed, Dr. Holtz says that she "has excelled in her position as Director from 2016 until the present," has "received positive performance evaluations" throughout her entire tenure, "routinely works more than the required 40 hours per week," and "meet[s] the needs of the School as well as the needs of her faculty and students."[65]

On March 18, 2024, the EEOC issued Dr. Holtz a right-to-sue-letter.[66] Dr. Holtz filed her Complaint in this matter on June 14, 2024.[67] The Board of Trustees and the Interim Dean filed a

---

[59] *Id.* ¶ 39.

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] *Id.* ¶ 41.

[64] *Id.* ¶¶ 10, 17.

[65] *Id.* ¶ 17.

[66] *Id.* ¶ 8.

[67] *Id.* at 1.

Motion to Dismiss on July 9, 2024.[68]  The Provost filed a Motion to Dismiss on August 28, 2024.[69]  Both Motions have been fully briefed by the parties and are ready for resolution.

## II.    LEGAL ANALYSIS

Defendants argue that, for several independent reasons, Dr. Holtz's Complaint fails to state a viable cause of action.[70]  The Court need only address one of those reasons because it is—on its own—fatal to the viability of Dr. Holtz's claims in this case.

Failure-to-accommodate claims are divided into three categories, only two of which are relevant for our purposes.[71]  First, an employee can bring a failure-to-accommodate claim if an employer fails to provide an accommodation that "enable[s] [the employee] with a disability who is qualified to perform the essential functions of [the] position" (i.e., a job-performance accommodation claim).[72]  Second, an employee can bring a failure-to-accommodate claim if the employer fails to provide an accommodation that would enable the employee "to enjoy equal benefits and privileges of employment as are enjoyed by . . . other similarly situated employees without disabilities" (i.e., a benefit-or-privilege-of-employment accommodation claim).[73]

According to Eighth Circuit precedent, "[t]he ADA requires employers to make reasonable accommodations to allow disabled individuals to perform the essential functions of their

---

[68] Board of Trustees' Mot. to Dismiss (Doc. 7).

[69] Provost's Mot. to Dismiss (Doc. 13).  It appears that the Provost was not served until August 22, 2024—and, even then, service might not have been properly completed.  *Id.* at 2.  In any event, the Provost's Motion to Dismiss does not challenge service, and Dr. Holtz does not challenge the timeliness of the Provost's Motion to Dismiss.

[70] *See* Br. in Supp. of Board of Trustees' Mot. to Dismiss (Doc. 8) at 5–10; Br. in Supp. of Provost's Mot. to Dismiss (Doc. 14).

[71] *See* 29 C.F.R. § 1630.2(o)(1) (defining the term "reasonable accommodation" by three different means); *see also Hopman v. Union Pac. R.R.*, 68 F.4th 394, 399, 402 (8th Cir. 2023) (noting the distinctions between the different types of failure-to-accommodate claims).

[72] 29 C.F.R. § 1630.2(o)(1)(ii).

[73] 29 C.F.R. § 1630.2(o)(1)(iii).

positions."[74]  "If more than one accommodation would allow the individual to perform the essential functions of the position, the employer providing the accommodation has the ultimate discretion to choose between effective accommodations . . . ."[75]

Considering these principles, Dr. Holtz has a big problem if she is bringing a job-performance accommodation claim.  The only reasonable inference to be made from the Complaint is that Dr. Holtz can perform the essential elements of her job without the accommodation she seeks.  Indeed, Dr. Holtz concedes that she "has excelled in her position as Director from 2016 until the present," has "received positive performance evaluations" throughout her entire tenure, "routinely works more than the required 40 hours per week," and "meet[s] the needs of the School as well as the needs of her faculty and students."[76]  Dr. Holtz does not claim that there is any essential function of her job that she cannot do at the present time and could only perform with further accommodation.

Perhaps, then, Dr. Holtz is not really making a job-performance accommodation claim, but rather is making a benefit-or-privilege-of-employment accommodation claim.  This would be like the claim in *Hopman v. Union Pacific Railroad*, where a train conductor requested to bring his service dog on the train with him while admitting that he could perform the essential functions of the job even without that requested accommodation.[77]  Hopman argued that, without the service dog, his PTSD and associated injuries would cause him mental and physical pain.[78]  Somewhat similarly, in the instant case, Dr. Holtz's claim appears to be that, because the University rejected

---

[74] *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999).

[75] *Id.* at 1337 (internal quotation marks omitted).

[76] Compl. (Doc. 1) ¶ 17.

[77] 68 F.4th at 398 ("Hopman did not claim denial of a job performance accommodation . . . , presumably because he is able to perform the essential functions of his [job] with or without the requested service dog accommodation.").

[78] *See id.* at 397–98, 401.

her preferred accommodation, her disability has (1) caused her significant pain at work, and (2) forced her (on at least some occasions) to use sick days that she otherwise would not have had to use.[79]

In *Hopman*, the Eighth Circuit rejected the idea that freedom from pain can be considered a benefit or privilege of employment.[80]  So, Dr. Holtz's pain-related argument doesn't get her anywhere.  But what about her sick-days argument?  Unlike the freedom from pain, sick days (generally speaking) seem to fall squarely within the parameters of benefits or privileges of employment.[81]  Still, Dr. Holtz has a problem here.  She has not pled enough about sick days.  For example, we do not know anything about how the University structures whatever sick-days program it might have.  We do not know how many sick days employees like Dr. Holtz are allotted.  We do not know whether Dr. Holtz has had to unnecessarily take two sick days (which might be *de minimis*) or 20 sick days or some other number.  We do not know what happens if an employee goes over her allotted sick days (discipline?) or if an employee stays under her allotted sick days (incentive pay outs?).[82]

As currently pled, there is not enough in the Complaint to plausibly suggest that Dr. Holtz is not being provided "an opportunity to attain the same level of performance, benefits, and privileges that is available to similarly situated employees who are not disabled."[83]  The appropriate thing to do in this situation is to GRANT the Motions to Dismiss but also give

---

[79] Compl. (Doc. 1) ¶ 29.

[80] *See* 68 F.4th at 401.

[81] *See id.* at 400 (defining "benefits and privileges of employment" as "fringe benefits, access to recreational programs and facilities, and other employer-provided workplace advantages not directly related to job performance").

[82] We also do not know how Dr. Holtz being permitted to take her lunch hour at home would cause her to use fewer sick days.

[83] *Kiel*, 169 F.3d at 1136.

Dr. Holtz an opportunity to amend her Complaint. Because the Court chooses to take this route, it need not address Defendants' other arguments at this time. But, for efficiency's sake, the Court makes the following points.

First, under *Hopman*, it is clear that Eighth Circuit precedent requires the plaintiff to show an adverse employment action taken against her as part of a successful job-performance accommodation claim.[84] So, if Dr. Holtz is bringing a job-performance accommodation claim, she has to allege an adverse employment action due to her disability. It is not clear whether she has chinned that bar. Although Dr. Holtz argues that her more flexible schedule (from 2016–2023) was taken away,[85] there is nothing in the Complaint that suggests the more flexible schedule was taken away because of disability. And although Dr. Holtz has alleged that she has had to unnecessarily use sick days (from 2023–present),[86] her pleading here suffers from the same deficiency as noted on page 11.[87] The Court will be in a better position to determine the adverse employment action issue—as that concept has been tweaked by *Muldrow v. City of St. Louis*[88]—following Dr. Holtz's amendment to her Complaint.

Second, *Hopman* makes clear that the Eighth Circuit has not decided whether an adverse employment action is a necessary component of a benefit-or-privilege-of-employment accommodation claim.[89] Indeed, *Hopman* hints that such an allegation may be unnecessary in that context: "At first glance, the shoe does not seem to fit if the benefit or privilege of employment at

---

[84] *See* 68 F.4th at 402 ("[A]n ADA failure-to-accommodate claim requires proof of a prima facie case of discrimination, which in turn requires proof that the employee 'suffered an adverse employment decision because of the disability.'" (quoting *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 923 (8th Cir. 2018))).

[85] *See* Compl. (Doc. 1) ¶ 24.

[86] *See id.* ¶ 29.

[87] *See supra* p. 11 ("[Dr. Holtz] has not pled enough about sick days.").

[88] *See* 601 U.S. 346 (2024).

[89] *See* 68 F.4th at 402.

issue is not directly job-related."[90]  Once Dr. Holtz amends her Complaint, the Court will want more briefing on this specific question if Defendants decide to again move to dismiss.

*Third*, the Court agrees with Defendants that current Eighth Circuit caselaw requires Dr. Holtz to allege in her Complaint facts that make it plausible that the University failed to engage in good faith in the interactive process.[91]  But the Court agrees with Dr. Holtz that, for purposes of overcoming a motion to dismiss, she has alleged enough on this front.[92]  To be sure, from the allegations in the Complaint, there seems to be a fair chance that Defendants will prevail on good-faith-interactive-process grounds at summary judgment.  But we are not at the summary judgment stage, and the allegations are enough to surmount the pretty low plausibility standard.  Although the University clearly and repeatedly engaged with Dr. Holtz and provided what appears to be a pretty substantial accommodation, there is just enough in the Complaint to make bad faith plausible—the Court repeats: not likely, but plausible—at this early stage of the litigation.  Dr. Holtz's allegations include: (1) her repeated entreaties to the University concerning the insufficiency of the accommodation;[93] (2) the University's (alleged) continued denial of any further schedule modifications;[94] (3) the University's (alleged) inconsistent reasons for the

---

[90] *Id.*

[91] *See Mobley v. St. Luke's Health Sys., Inc.*, 53 F.4th 452, 457 (8th Cir. 2022) ("[F]or a failure-to-accommodate claim to survive summary judgment, an employee must do more than establish a prima facie case—[she] must also show that [her] employer failed to engage in the interactive process in good faith."); *Garrison v. Dolgencorp, LLC*, 939 F.3d 937, 941 (8th Cir. 2019) ("To succeed on her claim, [the plaintiff] must establish that . . . [the defendant] failed to engage in a 'flexible' and 'informal interactive process' with [the plaintiff] about possible accommodations . . . ." (quoting *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 951–52 (8th Cir. 1999))).

[92] *See E.E.O.C. v. Product Fabricators, Inc.*, 763 F.3d 963, 971 (8th Cir. 2014) ("To show that the employer failed to participate in the interactive process, the employee must show: '(1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith.'" (quoting *Peyton v. Fred's Stores of Ark., Inc.*, 561 F.3d 900, 902 (8th Cir. 2009))).

[93] Compl. (Doc. 1) ¶¶ 28, 30, 33, 39–40.

[94] *Id.* ¶¶ 31, 34, 41.

13

denial;[95] and (4) the University's (alleged) different treatment of other Directors and employees with respect to schedules, lunch, and remote work.[96]

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Motions to Dismiss but also gives Plaintiff 30 days to file an Amended Complaint under Federal Rule of Civil Procedure 15.[97]

IT IS SO ORDERED this 14th day of March 2025.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[95] *Id.* ¶¶ 32, 34.

[96] *Id.* ¶¶ 26, 35.

[97] Board of Trustees' Mot. to Dismiss (Doc. 7); Provost's Mot. to Dismiss (Doc. 13). Dr. Holtz has conceded that she may not seek emotional distress damages under Section 504 of the Rehabilitation Act. Pl.'s Resp. in Opp'n to Board of Trustees' Mot. to Dismiss (Doc. 15) at 9; Pl's Resp. in Opp'n to Provost's Mot. to Dismiss (Doc. 18) at 10. So, the emotional-damages portions of her claims are dismissed with prejudice.