IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JENNIFER HOLTZ                                                                                    PLAINTIFF

v.                                            Case No. 4:24-cv-00511-LPR

BOARD OF TRUSTEES OF THE
UNIVERSITY OF ARKANSAS;
ANN BAIN, in her official capacity; and
THOMAS CLIFTON, in his official capacity                                            DEFENDANTS

## ORDER

In this case, Plaintiff (Dr. Jennifer Holtz) alleges that her employer (the University of Arkansas) failed to reasonably accommodate her disability.[1]  Dr. Holtz brings suit against the University under the Americans with Disabilities Act and the Rehabilitation Act.[2]  The University seeks dismissal of all claims.[3]

This is not the first time the Court has ruled on a dismissal motion in this case.  In March of 2025, the Court dismissed the claims brought in Dr. Holtz's original Complaint.[4]  The Court concluded that, as then pled, Dr. Holtz's Complaint did not state any viable claims.[5]  But the Court noted that—at least with respect to some claims—Dr. Holtz might be able to remedy the identified deficiencies.[6]  Accordingly, the Court offered Dr. Holtz the chance to amend her Complaint.[7]

---

[1] *See* Am. Compl. (Doc. 23).

[2] *See id.*

[3] Defs.' Mot. to Dismiss Am. Compl. (Doc. 24).  The Court is using the term "the University" as shorthand for the Board of Trustees of the University of Arkansas and the two Defendants sued in their official capacities only.  *See* Am. Compl. (Doc. 23) at 1; March 14, 2025 Order (Doc. 22) at 1–2 (explaining that the claims against all named Defendants boil down to claims against the University of Arkansas).

[4] *See generally* March 14, 2025 Order (Doc. 22).

[5] *See id.* at 11–14.

[6] *See id*.

[7] *See id*. at 14.

Dr. Holtz took the Court up on this offer and filed an Amended Complaint in April of 2025.[8]  In response, the University moved to dismiss the Amended Complaint.[9]  The Court has closely reviewed the Amended Complaint, considered the parties' briefing, and is now ready to resolve the University's Motion.

Today's Order will (1) assume familiarity with the factual and legal background of this case and (2) build off of the Court's March 2025 Order dismissing the original Complaint.[10]  That is because the Amended Complaint hews very closely to the original Complaint.  Indeed, there are only two significant differences between the original Complaint and the Amended Complaint.  First, the Amended Complaint is clearer that Dr. Holtz is bringing only benefit-or-privilege-of-employment accommodation claims (as opposed to job-performance accommodation claims).[11]  Second, the Amended Complaint adds a few more detailed allegations that seem intended to address the deficiencies identified in the Court's March 2025 Order.

Although the additional fact allegations in the Amended Complaint make this a closer call than it was in March of 2025, the Court still concludes that Dr. Holtz has failed to state any viable claims.  To understand why this is so, it is necessary to first summarize the additional allegations in the Amended Complaint and then analyze whether the new allegations make a difference under the governing law.

---

[8] Doc. 23.

[9] Defs.' Mot. to Dismiss Am. Compl. (Doc. 24).

[10] *See* March 14, 2025 Order (Doc. 22).

[11] *See* Am. Compl. (Doc. 23) ¶¶ 57, 64.  The limitation of the claims in the Amended Complaint to benefit-or-privilege-of-employment accommodation claim is confirmed by Dr. Holtz herself in her Brief opposing dismissal of the Amended Complaint.  *See* Pl.'s Resp. to Defs.' Mot. to Dismiss (Doc. 26) at 3–4.

## I.    The Additional Allegations

Generally, the Amended Complaint alleges that the University's failure to reasonably accommodate Dr. Holtz's disability denied Dr. Holtz several "privileges of employment . . . ."[12] More specifically, the Amended Complaint identifies what "privileges" it alleges were denied to Dr. Holtz: "the right to set one's own schedule, the right to periodically work remotely, and the right to take full advantage of the University's paid leave policy."[13]  And the Amended Complaint provides supporting fact allegations for each of these broader contentions.

As far as setting one's own work schedule and periodically working remotely, the Amended Complaint alleges that "UALR does not normally micromanage the work hours of its Directors, nor set a precise work schedule for them[,]" because "UALR Directors are considered highly skilled professionals who are provided discretion in the manner in which they go about completing their duties."[14]  Against this factual backdrop, the Amended Complaint alleges that, starting in June of 2023, the University required Dr. Holtz to work on campus from 7:00 a.m. to 1:00 p.m. every workday even though other University Directors got to work from home at their discretion.[15]  The Amended Complaint also alleges that the schedule imposed on Dr. Holtz "eliminated [her] ability to choose a lunch time that aligned with her needs and productivity."[16]  According to the Amended Complaint, "[f]or UALR Directors other than Dr. Holtz, and for Dr. Holtz until June of 2023, choosing the time of one's own lunch break is a privilege of employment."[17]

---

[12] Doc. 23 ¶¶ 57, 64.

[13] *Id.*

[14] *Id.* ¶ 30.

[15] *See id.* ¶¶ 28–29.  In this regard, "Dr. Holtz asked that she at least be permitted to work from home one day per week like other Directors routinely do, and the University denied that request."  *Id.* ¶ 29.

[16] Doc. 23 ¶ 30.

[17] *Id.*

As far as the University's paid leave policy, the Amended Complaint alleges that Dr. Holtz (and similarly situated University employees) are allotted one sick day per month and two vacation days per month.[18]  "Unused vacation days may be carried over to the next year, and sick days may be carried over, as long as the cumulative hours do not exceed 960."[19]  According to the Amended Complaint, the failure to reasonably accommodate Dr. Holtz's disability left her—practically speaking—with "fewer vacation and sick days" to use than her non-disabled counterparts.[20]  The Amended Complaint alleges that Dr. Holtz "lost at least 71 hours of paid leave in 2023, . . . lost at least 106 hours of paid leave in 2024, lost at least 43 hours of paid leave in [the first three and a half months of] 2025[,]" and "was forced to work for two days without pay in 2023. . . ."[21]

Describing how Dr. Holtz "lost" hours of paid leave, the Amended Complaint alleges that "Dr. Holtz has [had] . . . to take unnecessary sick leave on days when she was capable of working."[22]  Specifically, the Amended Complaint alleges that "the denial of [Dr. Holtz's] request to work one day per week remotely meant that she would need to take sick leave on days when she was capable of working but not capable of driving to the office."[23]  According to the Amended Complaint, "[t]his results from the fact that Dr. Holtz sometimes needs strong pain medication earlier than 1:15 [p.m.], after which point she cannot drive."[24]

---

[18] *Id.* ¶ 31.

[19] *Id.*

[20] *Id.* ¶ 34.

[21] *Id.* ¶ 48.

[22] *Id.* ¶ 34.

[23] *Id.* ¶ 33.

[24] *Id.*  The Amended Complaint also alleges that Dr. Holtz has "been forced to work on days she was in significant pain and would have taken a sick day, because she feared running out of sick days due to the forced in-office schedule." *Id.* ¶ 34.

### II. Legal Analysis

The statute ultimately governing the Court's analysis provides that no employer "shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[25]  The same statute defines "discriminate against a qualified individual on the basis of disability" as "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . ."[26]  Accordingly, an employer acts unlawfully if that employer does not make a reasonable accommodation to the known physical or mental limitations of an otherwise qualified employee with a disability in regard to terms, conditions, and privileges of employment.

So, what is a reasonable accommodation for purposes of the governing statute?  In two recent cases—*Hopman v. Union Pacific Railroad* and *Howard v. City of Sedalia*—the Eighth Circuit accepted the definition of reasonable accommodation found in the EEOC's regulations.[27]  And, although the Supreme Court's subsequent decision in *Loper Bright Enterprises v. Raimondo*[28] might give Dr. Holtz a basis for resisting the EEOC's definition of reasonable accommodation, she does not do so.[29]  Instead, she embraces it.[30]  Because no party argues that *Hopman and Howard*

---

[25] 42 U.S.C. § 12112(a).

[26] *Id.* § 12112(b)(5)(A).  *See also Howard v. City of Sedalia*, 103 F.4th 536, 538 (8th Cir. 2024).  The other definitions of discrimination in § 12112(b) are not at issue in this Motion.  Nor is the undue hardship exception embedded in § 12112(b)(5)(A).

[27] *Hopman v. Union Pac. R.R.*, 68 F.4th 394, 396–97 (8th Cir. 2023); *Howard*, 103 F.4th at 538.

[28] *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).

[29] *See* Pl.'s Resp. to Defs.' Mot. to Dismiss (Doc. 26) at 3–7.

[30] *See id.*

have been called into doubt by *Loper Bright*, the Court treats *Hopman and Howard* as fully binding precedent.[31]

Pursuant to the relevant EEOC regulation, "[t]he term reasonable accommodation means: (i) [m]odifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires; or (ii) [m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position; or (iii) [m]odifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities."[32]  The parties appear to agree that, for the instant case, only the last definition matters.[33]  So that definition bears repeating: "[m]odifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities."[34]

The point here is that one of the things Dr. Holtz must eventually prove in this case is that, without the University providing some sort of modification or adjustment, Dr. Holtz's disability would prevent her from equally enjoying some benefit or privilege that is enjoyed by other similarly situated University employees without disabilities.  Otherwise, the modification or

---

[31] The briefing related to the instant Motion was filed well after the Supreme Court decided *Loper Bright*.  *Compare* Pl.'s Resp. to Defs.' Mot. to Dismiss (Doc. 26) (filed on May 11, 2025), *with Loper Bright*, 603 U.S. 369 (handed down on June 28, 2024).  Dr. Holtz could have made the argument that *Hopman* and *Howard* are no longer good law.

[32] 29 C.F.R. § 1630.2(o)(1).

[33] *See* Pl.'s Resp. to Defs.' Mot. to Dismiss (Doc. 26) at 3 (focusing in on "[s]ection (iii)" to support her claims); Defs.' Reply in Supp. of Defs.' Mot. to Dismiss Am. Compl. (Doc. 29) at 2–5, 2 n.1 (analyzing the instant case through the lens of section (iii) and noting that Dr. Holtz is pursuing only a section (iii) argument).

[34] 29 C.F.R. § 1630.2(o)(1)(iii).

adjustment cannot be said to be "enabl[ing] a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities."[35]    And, as *Hopman* explained, "the employer duty to provide 'equal benefits and privileges of employment' defined in § 1630.2(o)(1)(iii) is limited by the plain text of the regulation."[36]

To avoid dismissal at this stage of the litigation, then, Dr. Holtz must have pled facts that make it plausible that, without the University providing some sort of modification or adjustment, Dr. Holtz's disability would prevent her from equally enjoying a benefit or privilege that is enjoyed by other similarly situated University employees without disabilities.[37]    And, for the reasons discussed below, the Court concludes that Dr. Holtz has not met this pleading requirement.

### A. Sick Leave[38]

In the Court's March 2025 Order, the Court noted that, "generally speaking[,]" "sick days . . . seem to fall squarely within the parameters of benefits or privileges of employment."[39] Dr. Holtz agrees.[40]    And it appears that the University agrees too.[41]    So the Court will not gild the lily on this point.  Instead, the Court proceeds to address the serious dispute between the parties.

---

[35] *Id.*

[36] *Hopman*, 68 F.4th at 400.

[37] *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) ("[To] survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a sheer possibility." (internal citations and quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).

[38] The same analysis applies to vacation days.

[39] March 14, 2025 Order (Doc. 22) at 11.

[40] *See* Pl.'s Resp. to Defs.' Mot. to Dismiss (Doc. 26) at 5.

[41] *See* Defs.' Reply in Supp. of Defs.' Mot. to Dismiss Am. Compl. (Doc. 29) at 4 ("Fringe benefits, including sick leave, can be a privilege or benefit of employment under the ADA to the extent the employer provides such benefits.").

Accepting the general notion of sick days as a privilege or benefit of employment, the University nonetheless contends that there is a "fatal flaw in [Dr.] Holtz's allegations regarding . . . sick leave . . . ."[42]  More specifically, the University argues—although not in these exact words—that the allegations in the Amended Complaint make it clear that: (1) Dr. Holtz had full access to the same sick day benefit as her non-disabled counterparts; and (2) Dr. Holtz's disability did not prevent her from equally enjoying the benefit as compared to her counterparts.[43]  Dr. Holtz frames things differently.  She argues that the failure of the University to increase her remote work—which is really the accommodation she seeks—"has the indirect effect of reducing her access to . . . leave benefits" compared to her counterparts.[44]  Dr. Holtz's point is that, unlike her, other University Directors get to work remotely at their discretion and thus do not have to take sick leave just because they don't physically come to work.[45]

The Court is more persuaded by the University's argument.  The Amended Complaint makes clear that Dr. Holtz was given the same number of sick days as her non-disabled counterparts, had the same ability to roll them over, and was allowed to use them as she saw fit.[46]  Furthermore, the Amended Complaint does not allege that Dr. Holtz ever ran out of sick days such that she could not stay home on a day she desired to do so.[47]

---

[42] *Id.*

[43] *See id.* at 4–6.

[44] Pl.'s Resp. to Defs.' Mot. to Dismiss (Doc. 26) at 6–7.

[45] *See id.*

[46] *See* Doc. 23 ¶¶ 31, 33–34.

[47] Although the Amended Complaint does allege that Dr. Holtz "was forced to work for two days without pay in 2023," Doc. 23 ¶ 48, the Amended Complaint never explains why she had to do so.  For example, the Amended Complaint never says that she had to work without pay because she took sick leave or vacation days she did not have.  The Court cannot supply the "why" here, as that would be inappropriate speculation.

The Court acknowledges, of course, that Dr. Holtz used some of her sick days when she would have been able to work at home.[48]  On those days, Dr. Holtz says she stayed home because the medication she took to ease her pain prevented her from driving.[49]  But she is adamant that, on those days, she could do her work.[50]  And therein lies the problem.  Dr. Holtz's disability isn't the thing that prevented her from coming to work on those days.  Nothing in the Amended Complaint suggests Dr. Holtz could not have used Uber, Lyft, a taxi, or a bus to get to work, or arranged a ride from a family or friend.[51]  In these circumstances, it is not plausible that Dr. Holtz's disability prevented her equal enjoyment of paid sick leave.[52]  And without that trigger, there can be no viable benefit-or-privilege-of-employment accommodation claim.

### B.  Setting One's Own Schedule and Periodically Working Remotely

Putting sick leave aside, Dr. Holtz contends that that there were two other benefits or privileges of employment that her non-disabled counterparts got to enjoy while she did not:  setting one's own schedule (including when to take a lunch break) and periodically working remotely.[53]  Here, the problem for Dr. Holtz is that *Hopman and Howard* use the relevant EEOC regulations

---

[48] *See* Am. Compl. (Doc. 23) ¶¶ 33–34, 48.

[49] *See id.* ¶¶ 15, 32–34.

[50] *See id.* ¶¶ 33–34, 48.

[51] There is nothing in the Amended Complaint to suggest that driving to work is a benefit or privilege of working at the University.  Nor is there anything to suggest the University has some type of obligation to worry about how an employee chooses to get to work.  *Cf. E.E.O.C. v. Charter Commc'ns, LLC*, 75 F.4th 729, 742 (7th Cir. 2023) ("Employers usually bear no responsibility for helping an employee with a disability commute to and from work.  Reliable and accessible public transportation, carpooling, or simply moving closer to the job may make it 'common sense' in many cases that the commute-related barrier is one the employee alone 'has the power to eliminate.'" (citing *Unrein v. PHC-Fort Morgan, Inc.*, 993 F.3d 873, 878–79 (10th Cir. 2021))).  *See also Brunckhorst v. City of Oak Park Heights*, 914 F.3d 1177, 1183 (8th Cir. 2019).

[52] Dr. Holtz's argument that she had to use sick days to work from home while her counterparts did not is a very fair one.  But it puts the cart before the horse.  As explained earlier, an employer's legal responsibility to provide a reasonable accommodation is only triggered where an employee's disability prevents her equal enjoyment of a benefit or privilege of employment.  *See supra* pp. 6–7.

[53] *See* Pl.'s Resp. to Defs.' Mot. to Dismiss (Doc. 26) at 4–5.

9

and guidance to cabin the meaning of a benefit or privilege of employment in a way that excludes things like schedule setting and working remotely.

The long and short of it is that schedule-setting and remote-working are not "employer provided or sponsored services and programs" as that term is used in *Hopman* and *Howard*.  And those two cases are clear that "the employer duty" regarding a disabled employee's enjoyment of equal benefits and privileges of employment is limited to "employer provided or sponsored services and programs."[54]  Said a little differently, because setting one's own schedule and remote working are not benefits or privileges of employment as that term is used in *Hopman* and *Howard* (and the EEOC regulations on which those cases rely), the reasonable accommodation duty is not triggered even if an employee's disability prevents her from equally enjoying setting one's own schedule or remote working.  And, without the triggering of such a duty to reasonably accommodate, there can be no viable benefit-or-privilege-of-employment accommodation claim.

### C.   Loose Ends

Given the foregoing, the Court is going to GRANT the Motion to Dismiss.  All of Dr. Holtz's claims will be dismissed for failure to state a claim.[55]  The Court could (and maybe should) end there.  But the Court has two other points it wishes to make.

---

[54] *Howard*, 103 F.4th at 541 ("The governing regulation limits an employer's ADA *duty* to make this accommodation to 'employer sponsored placement or counseling services, and to employer provided [facilities].' The limitation reflects long-standing judicial and agency efforts to keep accommodation *requirements* 'within manageable bounds.'" (alteration and emphasis in original) (internal citations omitted) (first quoting 29 C.F.R. Part 1630 App., § 1630.9; then quoting *Alexander v Choate*, 469 U.S. 287, 299 (1985))); *Hopman*, 68 F.4th at 400 ("Hopman argues that the district court's interpretation (and therefore the EEOC regulation) is a 'perverse view . . . firmly at odds with disability law.'  But he cites no case, and we have found none, where an employee's failure-to-accommodate claim was based entirely on the benefits and privileges of employment duty in 29 C.F.R. § 1630.2(o)(1)(iii), and the court held that the duty was not limited to employer provided or sponsored services and programs.  We agree with the district court that the employer duty to provide 'equal benefits and privileges of employment' defined in 29 C.F.R. § 1630.2(o)(1)(iii) is limited by the plain text of the regulation.").  To the extent Dr. Holtz is arguing that schedule-setting and remote-working should be treated like sick leave, vacation days, or fringe benefits, the Court disagrees.  Neither *Hopman*, nor *Howard*, nor any other Eighth Circuit case suggest the term benefits can be so loosely defined as to encompass things so different in kind from sick leave, vacation days, or fringe benefits.

[55] It is unnecessary to reach the University's other arguments.  But Court will note, as it did in its March 2025 Order, that the Dr. Holtz has conceded that she may not seek emotional distress damages under Section 504 of the

First, it is important to note that the Court is resolving only the specific claims brought by Dr. Holtz. And those claims are failure-to-reasonably-accommodate claims.[56] Dr. Holtz has not brought—and thus this Court has not addressed—a straight disability discrimination claim. Taking the allegations in the Amended Complaint as true, the Court understands that Dr. Holtz feels aggrieved because, in June of 2023, her ability to periodically work from home and to set her own schedule was taken away while her non-disabled counterparts still got to do those things. Whether this type of differential treatment occurred, whether it was because of Dr. Holtz's disability, and whether it regarded terms or conditions of employment are all questions the Court need not answer because Dr. Holtz did not bring a straight disability claim.

Second, the Court acknowledges that it is possible that everyone involved in this case— the Court, the University, and Dr. Holtz—are talking past each other. Reading between the lines of the Amended Complaint and Dr. Holtz's Brief opposing dismissal, the Court wonders whether Dr. Holtz was trying to make a different argument than the one the Court addressed above and in the March 2025 Order. That alternative argument would be something like the following.

Because of Dr. Holtz's disability, she could not perform the essential functions of her job without some type of reasonable accommodation. Thus, the requirement to reasonably accommodate her was triggered pursuant to 29 C.F.R. § 1630.2(o)(1)(ii) as opposed to 29 C.F.R. § 1630.2(o)(1)(iii). Section 1630.2(o)(1)(ii) involves "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability . . . to perform the essential

---

Rehabilitation Act. *See* Doc. 25 at 14 n.97. Dr. Holtz argues that she is seeking emotional distress damages under the ADA. *See* Pl.'s Resp. to Defs.' Mot. to Dismiss (Doc. 26) at 13–14. But that argument is belied by her Amended Complaint, in which she expressly states that she "seeks only injunctive relief as remedy for the [alleged] ADA violations . . . ." Doc. 23 ¶ 58.

[56] *See* Am. Compl. (Doc. 23) ¶¶ 49–65.

functions of that position . . . ."  Since the requirement to reasonably accommodate Dr. Holtz was triggered, the question becomes (in large part) whether the University actually provided a reasonable accommodation.  It did not.  Although the accommodation provided by the University (working from 7:00 a.m. to 1:00 p.m. in the office and then 2:00 p.m. to 4:00 p.m. at home each day) enabled Dr. Holtz to perform the essential functions of her job as required by 29 C.F.R. § 1630.2(o)(1)(ii), the accommodation prevented her from equally enjoying all the benefits and privileges of employment enjoyed by other similarly situated employees without disabilities.  And that means the accommodation wasn't reasonable under 29 C.F.R. § 1630.2(o)(1)(iii).

If this is the argument Dr. Holtz intended to make and the claim Dr. Holtz intended to bring, it is an interesting one.  But there are problems with it.  As a threshold matter, this claim would be—at its core—a job-performance accommodation claim.  And Dr. Holtz's Brief opposing dismissal of the Amended Complaint eschews the idea that she is bringing that type of claim.[57] But let's put that aside.  The more substantive problem is that the Amended Complaint does not ever allege that, if Dr. Holtz was not accommodated at all, Dr. Holtz's disability would prevent her from performing the essential functions of her job.  In fact, the opposite is true.  The Amended Complaint alleges her symptoms can "be managed effectively with medication."[58]

It is true, as discussed elsewhere in this Order, that the Amended Complaint alleges that, when Dr. Holtz takes her medication, she can't drive.[59]  But driving is not an essential function of her job.  And there is no allegation that Dr. Holtz can't get to or from work by some other means—

---

[57] *See* Pl.'s Resp. to Defs.' Mot. to Dismiss (Doc. 26) at 3–4 (juxtaposing a job-performance accommodation claim with the claim Dr. Holtz is pursuing).

[58] *See* Doc. 23 ¶ 14.  Although the Amended Complaint suggests there are times when her symptoms are so severe (even with medication) that she can't work, the Amended Complaint does not allege how often this happens.  *See id.* ¶ 15.  Is it once a year, once a month, once a week, etc.?  There is no allegation that this occurs on a frequent enough basis to prevent her from performing the essential functions of her job.

[59] *See* Doc. 23 ¶¶ 15, 32–34.

Uber, Lyft, a taxi, a bus, a family member, or a friend.[60]  At bottom, without a reasonable accommodation, Dr. Holtz might have been in more pain while she does her job or have to spend more time and money getting to and from work.  But that does not mean Dr. Holtz would have been unable to perform the essential functions of the job without a reasonable accommodation.  And the Eighth Circuit is clear that "[t]he obligation to make reasonable accommodation . . . does not extend to the provision of adjustments or modifications that are primarily for the personal benefit of the individual with a disability."[61]

The one thing that Dr. Holtz has going for her is that the University did allow her to work from home (and flexible hours) from 2016 to 2023 and then allowed her to work a modified scheduled (including remote work every afternoon).[62]  But, on its own, an employer's voluntary decision to accommodate an employee's preferences does not make it plausible that the law requires that (or any) accommodation.  Employers can have all sorts of reasons for wanting to go above and beyond what the law requires in any aspect of the employer-employee relationship.[63]

---

[60] *See supra* note 51.

[61] *Hopman*, 68 F.4th at 401 (quoting 29 C.F.R. Part 1630 App., § 1630.9).

[62] *See* Am. Compl. (Doc. 23) ¶¶ 17–28.

[63] *Cf. Lipp v. Cargill Meat Sols. Corp.*, 911 F.3d 537, 546 (8th Cir. 2018) ("As this court recently stated, [i]f an employer bends over backwards to accommodate a disabled worker . . . it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation.  Here, instead of terminating Lipp, as it could have done, Cargill gave Lipp a 'Last Chance for attendance' and continued to permit 'authorized' disability-related absences despite her excessive absenteeism.  This did not, however, make additional unverified absences a reasonable accommodation at that time, no matter how many absences (verified or not) Cargill had permitted to that point or was willing to permit in the future.  To hold otherwise would be to punish Cargill for giving Lipp another chance instead of terminating her employment before she returned.  We do not read the ADA to apply in such a manner." (alteration in original) (internal quotation marks and citations omitted) (quoting *Faidley v. United Parcel Serv. of Am., Inc.*, 889 F.3d 933, 943 (8th Cir. 2018) (en banc))); *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1528 (11th Cir. 1997) ("[W]e further hold that the City of Alpharetta was not legally required, under the ADA, to accommodate Holbrook's disability . . . .  In this case there appears to be little doubt that, for quite some time and perhaps with relatively minor disruption or inconvenience, the City of Alpharetta was able to accommodate Holbrook with respect to those essential functions he concedes he cannot perform without assistance.  It is equally apparent, however, that the City of Alpharetta's previous accommodation may have exceeded that which the law requires.  We do not seek to discourage other employers from undertaking the kinds of accommodations of a disabled employee as those performed by the City of Alpharetta in Holbrook's case; indeed, it seems likely that the City retained a productive and highly competent employee based partly on its willingness to make such accommodations.  However, we cannot say that the City's decision to cease making those accommodations that pertained to the essential functions of

13

The bottom line here is that, even if Dr. Holtz was making this type of argument or bringing this type of claim, she would not get past the motion to dismiss stage. The facts pled in the Amended Complaint do not make it plausible that Dr. Holtz's disability would prevent her from performing the essential functions of her job in the absence of all accommodations. So a duty to reasonably accommodate is not triggered and thus we need not ask whether the accommodation provided by the University was reasonable.

## CONCLUSION

For the reasons set out above—which build off of the Court's March 2025 Order—the Court GRANTS the Defendants' Motion to Dismiss (Doc. 24). All of Dr. Holtz's claims are dismissed for failure to state a claim.

IT IS SO ORDERED this 30th day of March 2026.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

Holbrook's job was violative of the ADA."); *Hopman*, 68 F.4th at 401 ("It should be noted that it would not be a violation of this part for an employer to provide any of these personal modifications or adjustments, or to engage in supported employment or similar rehabilitative programs." (quoting 29 C.F.R. Part 1630 App., § 1630.9)).

14